Arthur Wilmot, Respondent, *v.* Annie Bell, Appellant.

*Nuisance — piling on land molding sand which is blown upon adjoining premises.*

Where a dealer in molding sand stores large piles thereof upon land owned by her, the blowing of such sand upon adjoining property becomes a nuisance and can be abated as such where the resultant injury to the adjoining property is so great that it visibly diminishes its value and materially interferes with physical comfort and the enjoyment of the property.

If, however, the blowing of sand upon the adjoining property is so slight and trivial as not to interrupt the reasonable enjoyment thereof, it does not constitute a nuisance.

APPEAL by the defendant, Annie Bell, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Saratoga on the 22d day of October, 1901, upon the decision of the court rendered after a trial at the Saratoga Special Term.

*Frank H. Osborn,* for the appellant.

*Edgar T. Brackett,* for the respondent.

CHASE, J. :

This is an action for a nuisance brought pursuant to article 7, title 1, chapter 14 (§§ 1660–1663) of the Code of Civil Procedure. It is an action at law, and could have been maintained as such at common law before said statute took effect. (*Cogswell* v. *N. Y., N. H. & Hartford R. R. Co.,* 105 N. Y. 319.)

The complaint demands judgment for legal relief only, and the decision of the court directs judgment in accordance with said article of the Code of Civil Procedure. The judgment entered includes a perpetual injunction against the defendant. This part of the judgment was not directed by the decision. So far as the judgment gives equitable relief, it is unauthorized, and its insertion in the judgment should not affect the substantial rights of the parties on this appeal.

The defendant is the owner of about three acres of land, situated on the north side of the main street leading westerly from the village of Round Lake and about 1,000 feet west of the depot and tracks of the railroad of the Delaware and Hudson Company, which passes through that village. On said property the defendant has deposited several large piles of molding sand. West of the defendant's said property are farming lands. The dwelling house owned and occupied by the plaintiff is 500 or 600 feet east of the defendant's property. Between the plaintiff's house and the defendant's property there is one other house, and between the plaintiff's house and said railroad tracks are other dwelling houses, stores and buildings, and on the east side of said railroad tracks are the grounds and buildings of the Round Lake Association. The defendant's land is on the crest of a hill. The land where the plaintiff's house

THIRD DEPARTMENT, NOVEMBER TERM, 1902.          [Vol. 76.

is situated is about 30 feet lower than the defendant's land where the sand is piled. The defendant is engaged in buying and selling molding sand. In the conduct of her business she purchases molding sand wherever it can be found for sale in the vicinity of Round Lake, and she then carts the same to the piles on her said property, where it remains until it is removed in smaller quantities from time to time for shipment. The defendant has been so engaged in business at Round Lake since the spring of 1895, and she now has stored on her said property about 25,000 tons of sand.

Molding sand when taken from the ground is damp and heavy and holds its shape, but when it is exposed to the sun and a dry atmosphere more or less of the sand on the surface of the piles can be carried by the wind. Plaintiff claims that the sand so deposited by the defendant on her property is blown into and about his house, and the sand so blown constitutes the alleged nuisance which the court has adjudged must be abated.

The legal principles governing the use of property and the conduct of business by adjoining and neighboring real property owners are well settled. The business conducted by the defendant is a lawful business. The conduct of the same is not in itself a nuisance. If, in the conduct of the business, the sand is so piled that it blows upon and injures the plaintiff's property to such an extent as to visibly diminish its value and materially interfere with physical comfort and the enjoyment of the same, it becomes a nuisance, and can be abated as such. When a business is so conducted it is not a lawful business lawfully conducted. (*Dunsbach* v. *Hollister*, 49 Hun, 352.) If the blowing of sand from the defendant's property is fanciful, or so slight and trivial as not to be an interruption of the reasonable enjoyment of the property of the plaintiff, the judgment herein should not have been rendered. The trial court has found that sand is blown on the plaintiff's premises, and that it has caused him and his family great discomfort and annoyance, and seriously affected the rental value of the property.

The question involved on this appeal is principally a question of fact. The contention of the parties in the trial court and in this court in regard to the facts is wholly antagonistic. The trial court has found the facts in favor of the plaintiff's contention, and the judgment must be sustained by this court unless the findings are

against the fair weight and preponderance of evidence, as shown by the record.

Similar findings of fact were sustained in *Dunsbach* v. *Hollister* (*supra*). The distance between the defendant's sand piles and the plaintiff's house is substantially the only difference in the facts between the *Dunsbach* case and this case.

It is claimed that the prevailing wind at Round Lake is from the west, and that the conformation of the land is such that the wind blows the greater part of the time in the direction of the plaintiff's house from the defendant's sand piles, and that the sand is not only carried from the defendant's property to and about the house of the plaintiff, but to much greater distances. Not only is the evidence of the plaintiff and those immediately associated with him very strongly against the defendant, but the plaintiff produced witnesses that have no immediate interest in the determination of the controversy, whose testimony corroborates that given by the plaintiff and his immediate friends.

A merchant at Round Lake, whose store is east of the railroad tracks and about 800 feet east of the plaintiff's house but in substantially the same direction from the defendant's property, testified : " Q. Have you ever seen the sand blow from these sand piles west of his house ? A. Yes, sir. Q. How frequently ? A. I could not tell how many times ; I have seen it quite frequently in wind storms. Q. And have you seen it as it come over beyond his house, over in your direction ? A. Yes, sir. Q. How far over towards that direction have you seen it blow ? A. Well, I don't know as I could tell definitely ; I have seen it from my store so that you could not see the buildings even along the railroad track. Q. Your store is perhaps 400 feet from the railroad track ? A. Yes. Q. And it has been so dense, the blow there, that you could not see the buildings along the railroad track at that distance of 300 or 400 feet? A. Yes. Q. Describe the character of the sand and the color of it ? A. Molding sand, yellow sand. Q. Coming from the direction of these piles? A. Yes, sir. Q. As far as your store have you seen it blow ? A. Yes, sir."

Another witness, speaking of a time when there was a severe wind, says that he was north of the plaintiff's property and saw the sand blow from the hill around the plaintiff's house to such an extent

that the house could scarcely be distinguished. The next day he was in the plaintiff's house, and he says, " I saw a great quantity of sand and dust. · It had the appearance of molding sand  *  *  * it was that color; the house was very much soiled with it; no chair that you could sit on; all covered with it and you could hardly distinguish what the carpet was, or one color; it was more or less on the window sills."

A painter, who had painted a house which is situated further from the sand piles than the plaintiff's house, but in substantially the same direction therefrom, testified that one day he had to stop painting because the sand came to such an extent that it sanded the side of the house. He then testified: "Q. In the eaves of the Rowley houses, did you find this same yellow sand? A. Yes. From one-half to two-thirds full around that side of the house; around the piazza. I should judge the gutters were two inches deep. I should estimate that the yellow sand was from an inch to an inch and a half in the gutters."

Another witness who had worked on the defendant's sand piles testified: " Q. State what you have seen with respect to sand blowing, sand from these piles, over toward and around the plaintiff's house? A. I have been up that way lots of noons when I could hardly walk up there from the sand blowing in my eyes, the air would be so full of it. Q. Sand from where? A. Sand from the piles. I was working on the piles and could see where it came from; followed them right up. Q. What have you seen as to its blowing around the plaintiff's house? A. Saw it so dense almost, you could hardly see the house; I worked right there at the well when I almost quit different times on account of the sand blowing so; the well at the plaintiff's house; back of the house toward the sand pile.  *  *  * Q. Do you remember any time when you had to quit work because the wind blew so? A. I can't, so far as the date. Q. The occurrence? A. I can recollect the occurrence when we were obliged to quit. The horses would not stand, and the men would not stand it because the sand blowing so dense from them piles. It was blowing directly towards the plaintiff's house. Almost all the time I was there the prevailing winds were westerly, some northerly, mostly north and west; there was nearly always a good breath stirring there."

We find no error of law requiring a reversal of the judgment, and upon the whole record we cannot say that the findings of fact are not supported by the evidence. There is nothing in the defendant's business that requires the piles of sand to be made in any particular way or place. If they are retained where they are now situated, they can be covered with sod or other substance, or a sufficient wind-break can be erected to prevent the sand from being blown in the direction of the plaintiff's property.

The judgment should be modified by striking therefrom the words " and the defendant is hereby perpetually restrained and enjoined from so conducting her business upon her said premises as that the molding sand, piled by her upon said premises, shall blow to or upon the premises of the plaintiff," and as so modified affirmed, without costs to either party.

All concurred.

Judgment modified by striking from the judgment the words " and the defendant is hereby perpetually restrained and enjoined from so conducting her business upon her said premises as that the molding sand piled by her upon said premises shall blow to or upon the premises of the plaintiff," and as so modified affirmed, without costs to either party.